Edward C. Walton (Bar No. 78490)
E-mail: ed.walton@procopio.com
Patrick W. Martin (Bar No. 163932)
E-mail: patrick.martin@procopio.com
L. Reza Wrathall (Bar No. 279770)
E-mail: reza.wrathall@procopio.com
Jose Anuar Estefan Davila (Bar No. 330350)
E-mail: anuar.estefan@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiffs
Alberto Aroeste, Estela Aroeste

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

ALBERTO AROESTE, ESTELA AROESTE,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 22-CV-682-AJB-KSC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR TRANSFER VENUE**

Hearing Date: August 25, 2022

Judge: Hon. Anthony J. Battaglia

Plaintiffs ALBERTO AROESTE and ESTELA AROESTE (collectively "Aroestes") hereby oppose Defendant THE UNITED STATES OF AMERICA ("Defendant") Motion to Dismiss or Transfer Venue.

TABLE OF CONTENTS

I. INTRODUCTION .......... 5

II. RELEVANT BACKGROUND .......... 5

III. ARGUMENT .......... 7

A. Contrary to Defendant's Assertion of a Tax Refund Action, Venue is Proper Under 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1355(a). .......... 7

B. Interest of Justice .......... 9

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Mendu v. U.S.*
127 AFTR 2d 2021-259 (Ct. Fed. Cl. 2021) .......... 9

*Noonis v. United States*
539 F. Supp 404 (S.D. Cal. 1982) .......... 7

*Topsnick v. United States*
544 Fed. App'x 630 (9th Cir. 2014) .......... 7

*United States v. Bormes*
568 U.S. 6 (2012) .......... 8

*United States v. Navajo Nation*
556 U.S. 287 (2009) .......... 8

**FEDERAL STATUTES, REGULATIONS, AND RULES**

31 C.F.R.
§ 5.9 .......... 6
§ 285.12(c) .......... 6

28 U.S.C.
§ 1346(a) .......... 8
§ 1346(a)(1) .......... 7, 9
§ 1355 .......... 6, 8, 9, 11
§ 1355(a) .......... 5, 7, 12
§ 1391 .......... 7
§ 1395(a) .......... 9
§ 1402(a)(1) .......... 8
§ 1402(a)(2) .......... 8
§ 1406(a) .......... 8

31 U.S.C.
§ 3701(b)(1)(F) .......... 6
§ 3711(g) .......... 6
§ 3711(g)(9)(H) .......... 6
§ 5314 .......... 5
§ 5321(a)(5) and (a)(6) .......... 5
§ 5321(b)(2) .......... 6

Bank Secrecy Act .......... 5

Currency and Foreign Transactions Reporting Act of 1970 .......... 5

Federal Debt Collection Practices Act .......... 6

Little Tucker Act, 28 U.S.C. § 1346(a)(2) .......... passim

Rule 4 of the Federal Rules of Civil Procedure .......... 9

## I.
## INTRODUCTION

This case centers on a claim for refund of improperly assessed and illegally exacted civil penalties and is therefore correctly brought under both the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and 28 U.S.C. § 1355(a). (ECF No. 1, Compl. ¶ 6). Defendant improperly conflates this action with actions for the refund of U.S. federal income tax, and thereby attempts to disestablish venue in this district on the misleading basis that this is a tax refund case, which it is not. In the alternative, Defendant accuses the Aroestes, who are 86 and 81 years old, respectively, of engaging in "forum shopping," which is akin to the pot calling the kettle black and does not overcome the closer connections that the Aroestes and the underlying claims have to this district that further militate against dismissal or transfer to the Middle District of Florida, a forum *non conveniens*.

## II.
## RELEVANT BACKGROUND

The FBAR is a creature of the Currency and Foreign Transactions Reporting Act of 1970, also known as the Bank Secrecy Act.[1] The statutory authority for the FBAR is found in 31 U.S.C. § 5314, which directs the United States Treasury to require a resident or citizen of the United States to keep records and/or file reports when making transactions or maintaining a relationship with a foreign financial agency, while 31 U.S.C. § 5321(a)(5) and (a)(6) establish civil penalties for violations of the FBAR reporting and recordkeeping requirements.

---

[1] The obligation to file an FBAR arises under 31 U.S.C. § 5314 and is fulfilled by filing FinCEN Form 114 electronically through the BSA E-Filing System by the same due date as individual income tax returns each year, although FinCEN has granted an automatic extension of time to Oct. 15 every year. Every "U.S. person" with a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country must file an FBAR if the aggregate maximum values in that person's foreign accounts exceed $10,000 at any time during the calendar year. Form 114 was previously known as TD F 90-22.1.

Through a series of delegations, the FBAR is enforced by the Internal Revenue Service ("IRS"). The FBAR is not part of the Internal Revenue Code (*i.e.*, Title 26), but rather is part of Title 31. Accordingly, in contrast to income tax cases, the IRS has no collection authority over FBAR penalties once assessed. Thus, if an account holder refuses to pay assessed penalties, the IRS must refer the case to the Bureau of the Fiscal Service for collection. *See* 31 U.S.C. § 3711(g); 31 C.F.R. § 5.9, and 31 C.F.R. § 285.12(c). Ultimately, if the FBAR penalties are not paid, the U.S. Justice Department must initiate legal action to reduce the assessed penalty to judgment and collect on it. 31 U.S.C. § 3711(g)(9)(H).

By statute, the U.S. Justice Department is required to initiate legal action in <u>federal district court</u> against the account holder within two years from the time an FBAR penalty is assessed. 31 U.S.C. § 5321(b)(2); 28 U.S.C. §1355. Once assessed, the FBAR penalty becomes a debt of the account holder subject to collection under the Federal Debt Collection Practices Act in Title 28, rather than collection procedures applicable to income tax and related penalties in Title 26. *See* 31 U.S.C. § 3701(b)(1)(F).

Meanwhile, the Aroestes, against whom FBAR penalties have been assessed and illegally exacted for the years 2012 and 2013 for certain Mexican Accounts the couple maintains for their retirement savings, are full time residents of <u>Mexico</u>. In fact, the couple, during the entirety of their lives, have raised and hosted their family in <u>Mexico</u>, sent their children to school in <u>Mexico</u>, predominantly banked in <u>Mexico</u>, and maintained most of their social connection and friendships in <u>Mexico</u>. In sum, the Aroestes' permanent home, tax residence, and center of vital interests are and always have been in <u>Mexico</u>. (ECF No. 1, Compl. ¶¶ 30-35).

Contrary to Defendant's assertions, the fact that Alberto Aroeste had a U.S. green card during the years 2012 and 2013 at issue is irrelevant because Alberto's permanent home and residence was solely in Mexico City, Mexico and not in the United States. (ECF No. 1, Compl. ¶¶ 55-63).

Also contrary to Defendant's assertions, the fact that Alberto and Estela jointly own a condominium in St Petersburg, Florida since 1980, which was originally purchased as a vacation place to stay during short recreational trips and to facilitate Alberto Aroeste's travel for work in the United States during the 1980s, is not dispositive of the couple's domicile or U.S. tax residency. (ECF No. 1, Compl. ¶¶ 25-26).

Moreover, as a matter of law, by application of Article 4 of the U.S.-Mexico Tax Treaty, Alberto is not – and has never been, including during the years 2012 and 2013 – a "United States person" for income tax purposes, and is therefore not subject to FBAR requirements. Accordingly, as a matter of law, no amount of the FBAR Penalties should apply to Alberto in the first place. (ECF No. 1, Compl. ¶¶ 64-67).

## III.

## ARGUMENT

### A. Contrary to Defendant's Assertion of a Tax Refund Action, Venue is Proper Under 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1355(a).

Defendant focuses its jurisdiction argument on 28 U.S.C. § 1346(a)(1), which governs "any civil action against the United States for the recovery of any internal-revenue tax" (*i.e.*, tax refund action). In contrast, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), under which the Aroestes bring this claim *in conjunction with* jurisdiction under 28 U.S.C. § 1355(a), governs "any other civil action or claim against the United States, not exceeding $10,000 in amount…"

Defendant's principal authority in support of improper venue is off-mark insofar as it presumes that this action falls under 28 U.S.C. § 1346(a)(1) (*i.e.*, internal-revenue tax), which this case does not. *Cf. Noonis v. United States*, 539 F. Supp 404, 405 (S.D. Cal. 1982) (**tax refund action** by a U.S. resident; court concluded that "[t]he venue provisions of 28 U.S.C. § 1391 do not apply to such **tax refund actions** brought by individual taxpayers); *Topsnick v. United States*, 544 Fed.

App'x 630, 631 (9th Cir. 2014) (**tax refund action** by a nonresident alien, who, unlike Aroestes, had not filed any income tax returns in his purported country of domicile).

The distinction between how Defendant characterizes this case (*i.e.*, a tax refund action) and how the Aroestes have brought this claim under the Little Tucker Act and 28 U.S.C. § 1355 is fundamental to resolving the jurisdictional issue at hand. First:

> [T]he Little Tucker Act provides that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims," of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §1346(a)(2). The Little Tucker Act and its companion statute, the Tucker Act, §1491(a)(1), do not themselves "creat[e] substantive rights," but "are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law."

*United States v. Bormes*, 568 U.S. 6, 10 (2012) (citing *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

Second, while true that under 28 U.S.C. § 1402(a)(1) any civil action in a U.S. district court against the United States under either prong of 28 U.S.C. § 1346(a) may be prosecuted in the judicial district where the plaintiff resides, 28 U.S.C. § 1402(a)(2) provides an exception: "Notwithstanding the foregoing provisions of this paragraph [regarding corporate defendants] a district court, **for the convenience of the parties and witnesses, in the interest of justice**, may transfer any such action to any other district or division" (*i.e.*, mirroring the provisions of 28 U.S.C. § 1406(a); emphasis added). For reasons set forth further below, the convenience of

the parties and the interest of justice in this case suggest that this district ***is*** the most appropriate venue for this action.

Third, Defendant conveniently ignores the jurisdictional predicate arising under 28 U.S.C. § 1355. Under 28 U.S.C. § 1355, Federal district courts have jurisdiction over actions for the recovery of any penalties incurred under acts of Congress. A civil action for the recovery of a pecuniary penalty may, subject to the process provisions of Rule 4 of the Federal Rules of Civil Procedure, be brought either **in the district in which it accrues** or in the one in which the defendant is found. *See* 28 U.S.C. § 1395(a). Moreover, although a matter of unsettled law in the Ninth Circuit, if a foreign account holder has paid less than all FBAR penalties assessed against that individual, such account holder may proceed in district court by seeking declaratory relief as to the invalidity of the assessment in addition to the recovery of partial penalties paid. *See, e.g.*, *Mendu v. U.S.*, 127 AFTR 2d 2021-259 (Ct. Fed. Cl. 2021) (FBAR penalties are not "internal-revenue taxes" and not subject to the various cross references relating to "internal-revenue taxes", including that found in 28 US § 1346(a)(1)).

**B. Interest of Justice**

In the interest of justice, this district is the proper venue because the U.S. information reporting compliance considerations underlying Defendant's illegal exaction, as well as the Aroestes' closest connections to the United States, were at all relevant times – and continue to be – centered in Southern California (ECF No. 1, Compl. ¶¶ 8 (a)-(k)), to wit:

a. the Aroestes' original U.S. income tax returns for the two years at issue (*i.e.*, 2012 and 2013) were prepared by a tax professional in Los Angeles, California;

b. the Aroestes received and acted on the advice of a former U.S. tax attorney whose practice is located in San Diego, California, to enter the

IRS's 2014 Offshore Voluntary Disclosure Program, the Aroestes' opt out from which program (subsequent to the advice of new U.S. tax counsel also located in San Diego, California) initiated the IRS Examination that eventually led to the illegal exaction at issue;

c. the main office of the Aroestes' current counsel for U.S. tax advice and estate planning since 2016 is located in San Diego, California, which office the Aroestes have travelled to and continue to visit in-person for consultations related to the illegal exaction at issue in this case, sometimes with difficulty given Alberto and Estela's current health conditions;

d. the IRS agreed and traveled to, then obtained all-day, in-person testimony from the Aroestes on November 20, 2019, at the same main office of the Aroestes' current U.S. counsel in San Diego, California;

e. San Diego, California is where the Aroestes have requested trial before the United States Tax Court for each of Alberto's and Estela's separate petitions for redetermination of deficiency noticed by the IRS for the tax years 2012, 2013 and 2014, United States Tax Court Docket Nos. 13024-20 and 15372-20;

f. the IRS's local counsel assigned to respond to the Aroestes' United States Tax Court cases, Docket Nos. 13024-20 and 15372-20, is located in San Diego, California;

g. the Aroestes' Penalty Payments (as defined below) to the IRS, which are the subject of the illegal exaction at issue, were issued in the form of two cashier's checks that the Aroestes obtained in person in San Diego, California, and remitted to the IRS from San Diego, California;

h. the Aroestes' Claim for Refund (as defined below) of the Penalty Payments was sent from San Diego, California;

i. not coincidental with all foregoing considerations, the San Diego, California area is where the Aroestes currently travel and spend most of their visits to the United States, because the couple's son and his family reside in the San Diego, California area;

j. the Aroestes have a family network of support in San Diego, California, which is highly important for them because of their advanced age and health concerns; and finally,

k. venue is proper in this district because Estela is currently seeking periodic maintenance treatments for lymphoma, a type of cancer of the lymphatic system, and also suffers from high blood pressure and osteoporosis which limits her mobility, so the Aroestes' familiarity with, and family connections in, the San Diego, California area make this the most convenient venue for the Aroestes to currently travel from Mexico City in order to have the requisite family and physical support for purposes of oral testimony.

Finally, it is in the interest of justice to provide a forum for the Aroestes to seek redress under both 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1355 in a manner that parallels and is on a level playing field as Defendant's pursuit in the Middle District of Florida. After all, based on the foregoing, why is Defendant the only party that can choose its preferred forum to sue on what it characterizes as a "functionally identical" action involving the same parties and similar issues and causes of action, notwithstanding the fact that Defendant's preferred forum (*i.e.*, Middle District of Florida) is divorced from the realities of how and where the Aroestes reside and how and where they connect to the United States?

//

//

//

**IV.**

**CONCLUSION**

This district ***is*** the proper venue for this case. Defendant is free to prosecute its separate case in the Middle District of Florida, where its claims of proper venue are so tenuous that it will likely have to work through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (*i.e.*, the "Hague Convention") to execute service of process at the Aroestes' true residence and domicile in Mexico City, Mexico. Rather than conflate the jurisdiction of this case with the jurisdiction of a tax refund case, it is in the interest of law under both the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and 28 U.S.C. § 1355(a), as well as in the interest of justice, that this Court deny Defendant's' Motion to Dismiss or Transfer Venue to a forum *non conveniens*.

DATED: July 19, 2022

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: s/ *Edward C. Walton*
Edward C. Walton
Patrick W. Martin
L. Reza Wrathall
Jose Anuar Estefan Davila
Attorneys for Plaintiffs
Alberto Aroeste, Estela Aroeste