UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO AROESTE and ESTELLA AROESTE,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No.:  22-cv-682-AJB-KSC<br><br>**ORDER ON JOINT DISCOVERY MOTION [Doc. No. 36]** |

## I. Introduction

Plaintiffs Alberto and Estella Aroeste sued the United States seeking to recoup penalty payments and to discharge their liability for penalties still outstanding for the non-filing of a Report of Foreign Bank and Financial Accounts ("FBAR") for the years 2012 and 2013 pursuant to 31 U.S.C. § 5321. Doc. No. 1 ¶ 9. The FBAR penalties at issue were assessed against the plaintiffs after a three-year administrative audit of their filings for tax years 2011 through 2015. *See* Doc. No. 1 ¶¶ 11, 40-44. The United States counterclaimed against plaintiffs to recover the balance of unpaid penalties. Doc. No. 11. On September 26, 2022, the District Court partially stayed this case pending the Supreme Court's resolution of *United States v. Bittner*, 19 F.4th 734 (9th Cir. 2021), *cert. granted* 142 S. Ct. 2833 (2022), on grounds the *Bittner* decision will control the monetary penalties allegedly

owed by plaintiffs to the United States. *See* Doc. Nos. 24, 25. Notwithstanding the stay, the parties are permitted to litigate the following two issues: "(1) whether Alberto Aroeste was a resident of Mexico under the United States – Mexico income tax treaty; and (2) [whether Alberto was] a 'United States person' required to file a Report of Foreign Bank and Financial Accounts (FBAR) for 2012 and/or 2013." Doc. No. 25.

On January 3, 2023, counsel for both parties jointly spoke with the Court's staff about a discovery dispute. Based on the information provided by counsel, the Court understands that plaintiffs seek in discovery the entire administrative record generated by the Internal Revenue Service ("IRS") during the (now completed) IRS audit of plaintiffs. *See* Doc. No. 34 at 2. After hearing the parties' basic positions on the issue, the Court ordered the parties to file a Joint Discovery Motion. *See id.* at 3-4. The Court specifically directed the parties to focus their briefing on the following two issues:

1. How is Alberto Aroeste's status under the United States – Mexico tax treaty germane to the issue of whether Mr. Aroeste was required to file the FBAR reports at issue in this case?

2. Assuming Mr. Aroeste's status under the tax treaty is relevant, how is discovery of the entire administrative record in this matter relevant and proportional (within the meaning of Rule 26) to determining Mr. Aroeste's status under the tax treaty and determining whether he was a "United States person" for purposes of filing an FBAR? *See* Doc. No. 34 at 3

The parties filed the Joint Motion on January 17, 2023. *See* Doc. No. 36. On January 20, 2023, the Court held a discovery conference at which counsel for both parties argued their respective positions. *See* Doc. Nos. 37, 41. Having reviewed the papers and heard argument from the parties, the Court **GRANTS IN PART AND DENIES IN PART** the plaintiffs' request to discover the entire administrative record for the reasons set forth in this Order.

//
//

## II. Factual Background of This Discovery Dispute

Based on the briefing and the Court's multiple colloquies with counsel for the parties, the Court understands the following facts are essentially undisputed: The IRS audited both plaintiffs' tax filings for the 2011 through 2015 tax years. That audit resulted in an assessment of approximately $3,000,000 of tax and penalty liability. The bulk of plaintiffs' liability arose from penalties assessed for failure to file so-called "information returns." Those amounts are not directly at issue in this lawsuit, and the plaintiffs are not, at least at this time, directly contesting them in any judicial or administrative forum. Post-audit income tax assessments accounted for another portion of plaintiffs' liability to the government. Those tax assessments are likewise not at issue in this lawsuit, but the plaintiffs have challenged them before the United States Tax Court. Finally, the audit led to the FBAR penalties at issue in this lawsuit, which were assessed only for tax years 2012 and 2013, because, whether rightly or wrongly, the plaintiffs did not disclose their holdings in various foreign bank accounts during those tax years.

Plaintiffs served a first set of requests for production of documents in November 2022. The parties have narrowed the scope of the requests through the meet-and-confer process such that plaintiffs only seek the complete administrative record, including those portions of the record generated during the administrative appeal process. The complete administrative file for the IRS's audit is a voluminous document that will, if fully produced, include over 7,000 pages of documentary evidence. Only a portion of the IRS's audit directly concerned the actual imposition of FBAR penalties. The majority of the audit concerned the IRS's determination of the plaintiffs' residency under the United States – Mexico Tax Treaty (hereinafter "the Treaty") for the tax years subject to audit. The complete administrative record will contain not only information provided to the IRS by the plaintiffs during the audit, but also evidence gathered as part of the IRS's independent investigation. The United States has thus far produced between 800 and 900 pages of documents, at least some of which have been extracted from the administrative record, but

it has limited its production to those portions of the record it contends are related solely to imposing the FBAR penalties at issue in this lawsuit.

### III.  ANALYSIS

The parties herein dispute the threshold issue of whether the IRS's entire administrative record is relevant to this action. The discovery process should, in theory, be cooperative and require little to no supervision from the Court. *Sali v. Corono Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). However, a party seeking discovery may move the Court to issue an order compelling production. Fed. R. Civ. P. 37(a). This Court has broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Ninth Circuit case law does not clearly answer the question of whether the party seeking discovery bears an initial burden of demonstrating the relevance of that discovery, or whether the party resisting discovery must make a showing of irrelevance to sustain an objection. *See Fei Fei Fan v. Yan Yao Jiang*, 2023 U.S. Dist. LEXIS 6544, at *5-6 (D. Nev. Jan. 13, 2023); *V5 Techs v. Switch, Ltc.*, 334 F.R.D. 306, 309-10 (D. Nev. 2019).  It is settled, however, that if the information sought is relevant, the party resisting discovery bears the ultimate burden of convincing the Court that the discovery sought should not be permitted. *See V5 Techs*, 334 F.R.D. at 309 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

Whether this relevance standard is satisfied here depends on two distinct issues. The first issue is purely legal: does Alberto Aroeste's tax residency status under the Treaty have any legal effect on whether he was required to file FBAR forms in 2012 and 2013? The second issue is more inherently factual: if Mr. Aroeste's tax residency status under the treaty is relevant to this matter, does discovery of the administrative record properly further that determination (as well as the determination of whether he was required to file FBARs more generally)?

//

//

### (A) Whether Mr. Aroeste's Tax Residency Status Under the Treaty is Legally Relevant to the IRS's Imposition of FBAR Penalties

The answer to whether Alberto Aroeste's status under the Treaty has any effect on the issue of the FBAR filing requirement in tax years 2012 and 2013 depends on the application of multiple, interconnected statutes and regulations. Anyone who qualifies as a "United States person" must file an annual FBAR report to disclose foreign bank holdings, and the IRS assesses penalties against those "United States persons" who fail to file. *See* 31 C.F.R. § 1010.350(a); *Bedrosian v. U.S. Dep't of Treasury*, 912 F.3d 144, 147 (3d Cir. 2018). Thus, as the government acknowledges, whether Mr. Aroeste was a "United States person" is potentially outcome determinative of his liability for the FBAR penalties at issue in this case. *See* Doc. No. 36 at 7.

The parties dispute whether Mr. Aroeste's status under the Treaty has any bearing on whether he was properly considered a "United States person" for purposes of filing FBARs. *Compare id.* at 2-4 with *id.* at 7-9. Plaintiffs contend that, if Mr.Aroeste was treated as a Mexican resident under the Treaty, that fact would disqualify him from being counted as a "United States person" under the FBAR regulations. *See id.* at 2-3. Defendant contends Mr. Aroeste's status under the Treaty is irrelevant because the Treaty solely concerns residency for purposes of income tax and excise tax assessments under Title 26 of the United States Code, whereas FBAR penalties are assessed under Title 31. *See id.* at 7-8.

"United States person," as used in the context of FBAR assessments, is a term of art specifically defined in the applicable Title 31 regulations. *See generally* 31 C.F.R. § 1010.350(b). The term applies to, among other things, "[a] resident of the United States." *Id.* § 1010.350(b)(2). "[R]esident of the United States" is further defined to include an individual who is a "resident alien" under 26 U.S.C. 7701(b) and the regulations thereunder. *Id.*

A non-U.S. citizen is treated as a "resident alien" if he or she is a "lawful permanent resident of the United States at any time" during an applicable calendar year. 26 U.S.C.

§ 7701(b)(1)(A)(i). An individual is a "lawful permanent resident" if he or she has been "lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with immigration laws" and if "such status has not been revoked (and has not been administratively or judicially determined to have been abandoned)." *Id.* § 7701(b)(6). However, "lawful permanent resident" status ceases to exist—at least for tax purposes—if an individual "commences to be treated as a resident of a foreign country under the provisions of a tax treaty between the United States and the foreign country, does not waive the benefits of such treaty applicable to residents of the foreign country, and notifies the Secretary of the commencement of such treatment." *Id.*[1]

The upshot of this statutory and regulatory framework applicable to this action, in which tax treaties provide a potential escape hatch that excuses certain "United States persons" from filing FBARs, can be expressed as a 5-step process:

(1) Under 26 U.S.C. § 7701(b)(6), anyone allowed to permanently reside within the United States by virtue of US immigration laws is a "lawful permanent resident" for tax purposes ***unless*** an applicable tax treaty allows that person to be treated as a resident of a foreign country for tax purposes only;

(2) Under 26 U.S.C. § 7701(b)(1)(A)(i), any "lawful permanent resident" is a "resident alien";

(3) Under 31 C.F.R. § 1010.350(b)(2), any "resident alien" is a "resident of the United States";

(4) Under 31 C.F.R. § 1010.350(b), Any "resident of the United States" is a "United States person" required to file an FBAR;

---

[1] Plaintiffs' counsel emphasizes that one can remain a lawful permanent resident for immigration purposes, but at the same time be treated as a resident of a foreign country for tax filing purposes under a tax treaty. *See* Doc. No. 41 at 15:16-17:9. Thus, Mr. Aroeste's country of "residency" under the Treaty might be "Mexico" when it comes to filing his taxes, but he can remain a lawful permanent resident who, as a matter of immigration law, is free to permanently reside in the United States.

   (5)  Therefore, any person allowed to permanently reside in the United States by virtue of US immigration laws must file an FBAR unless that person is entitled to be treated as a resident of a foreign country under a tax treaty.

It is undisputed that Mr. Aroeste is, and for many years has been, a "lawful permanent resident" of the United States as a matter of immigration law. Doc. No. 41 at 15:11-24. To use the colloquial terminology, he has a "green card." *Id*. His status as a "lawful permanent resident" in turn makes him a "resident alien," which means he is a "resident of the United States" and therefore, by operation of the statutes and regulations, at least presumptively a "United States person" required to file FBARs. The question is whether the Treaty provides him an escape hatch. Because the United States and Mexico indisputably have a tax treaty, Mr. Aroeste would *not* be a lawful permanent resident within the meaning of 26 U.S.C. section 7701(b)(6) *if* he commenced to be treated as a resident of Mexico under the Treaty (with the additional caveats enumerated in the statute); which might in turn have ultimately excused him from the requirement to file FBARs as a "United States person." The Court therefore concludes a determination of Mr. Aroeste's tax residency under the Treaty is directly relevant to—indeed it is outcome determinative of—the issue of whether he was required to file the FBARs at issue in this lawsuit.

The United States first suggests application of the Treaty is irrelevant here because the Treaty only concerns income *taxes* and excises *taxes*, and Mr. Aroeste was assessed FBAR *penalties* under a wholly different body of law. *See* Doc. No. 36 at 7. But this argument does not refute the plain language of the FBAR regulations, which explicitly invoke provisions of Title 26, including the provision that requires consideration of an individual's status under an applicable tax treaty for the purpose of determining whether an individual is a "United States person" subject to FBAR filing.

The United States further suggests it "does not matter" how Mr. Aroeste was treated under the Treaty because "[i]t only matters that Mr. Aroeste has lawful permanent residence and has not rescinded that residency." Doc. No. 36 at 8. But, again, the statutory framework explicitly provides that "lawful permanent resident" status can be abrogated,

for tax purposes only, by application of the Treaty, without requiring individuals to forsake their immigration status to claim the taxation benefits of a tax treaty. *See* 26 U.S.C. § 7701(b)(6). Based on the Court's reading of the controlling law, the Court **OVERRULES** defendant's objection that considerations of the Treaty are legally irrelevant to this lawsuit. Accordingly, if the administrative record is factually relevant and proportional to determining Mr. Aroeste's residency status under the Treaty (and also to assessing whether Mr. Aroeste was a "United States person" for any other reasons), it is discoverable.

### (B) Whether the Administrative Record is Relevant to Determining Mr. Aroeste's Status Under the Treaty or Determining Whether He Was Otherwise a "United States Person" For Purposes of Filing an FBAR

Plaintiffs have acquired a redacted copy of the IRS's administrative record from the audit through a provision of the Taxpayer First Act. Doc. Nos. 1 ¶ 42; 36 at 5-6; 41 at 7:24-8:7. That copy is, according to plaintiffs, incomplete because it omits any information added to the record after the initial audit, and it was heavily redacted by the IRS when produced to plaintiff during the administrative appeal. Doc. No. 41 at 7:24-8:7, 8:19-9:4.[2] According to plaintiffs, their review of the documents suggests the vast majority of the IRS's audit concerned whether Mr. Aroeste was a resident of the United States or of Mexico under the Treaty. *See* Doc. Nos. 36 at 5; 41 at 7:5-18. As represented, the IRS's record includes information gathered by the IRS auditor to determine how much time Mr. Aroeste spent in the United State and Mexico during the tax years at issue, which country was his permanent home, and in which country he has the most significant economic and family relationships. Doc. No. 41 at 7:5-18. All this information bears upon whether he is

---

[2]   Plaintiffs' counsel further suggests the administrative record is still being augmented as the IRS commences further penalty proceedings against the plaintiffs. *See* Doc. No. 41 at 10:22-11:4. If that is true, then the United States could conceivably be under a continuing duty to supplement if newly incorporated documents fall within the scope of any order compelling production. *See* Fed. R. Civ. P. 26(e).

a resident, for tax-filing purposes only, of the United States or of Mexico under the Treaty. *Id.* at 4:19-5:17, 7:10-18. The United States does not appear to meaningfully dispute this assertion about the nature and contents of the record.

As the Court has already concluded, Mr. Aroeste's residency under the Treaty is a potentially dispositive issue in this matter. If, under the Treaty, he was a Mexican resident in 2012 and 2013, he would have no obligation to file FBARs; but if he was a resident of the United States during this time frame, he is liable for some amount of FBAR penalties. Mr. Aroeste seeks to prove he was a Mexican resident for tax purposes, and thereby avoid any liability for his admitted failure to file FBARs. Doc. No. 41 at 5:21-6:7. The IRS's administrative record bears directly on that issue. It is, therefore, relevant to this matter. However, Mr. Aroeste was only assessed FBAR penalties in 2012 and 2013, and the administrative audit encompassed tax years 2011 through 2015. *See* Doc. No. 1 ¶¶ 9, 11, 40-44. Mr. Aroeste has not explained to the Court how his residency in any years other than 2012 or 2013 has any bearing on whether he was a resident of the United States during those years. Indeed, his counsel appears to agree it would be sufficient to consider only the information bearing on the tax years in which Mr. Aroeste was assessed FBARS, i.e., 2012 and 2013. Doc. No. 41 at 18:6-20.[3] Thus, the Court concludes the only portions of the record relevant to this case are those portions that bear upon Mr. Aroeste's residency under the Treaty for tax years 2012 and 2013.

The United States argues discovery of the administrative record would violate the stay in this case. Doc. Nos. 36 at 9-10; 41 at 11-12. This Court disagrees. Mr. Aroeste's residency under the Treaty is open to discovery notwithstanding the partial stay. *See* Doc.

---

[3]      Plaintiffs' counsel asserts that it does not matter when information entered the record, e.g., if it were added to the record ***after*** the initial audit yet bore upon Mr. Aroeste's residency during 2012 and 2013, it should nonetheless be discoverable. *See* Doc. No. 41 at 19. The Court agrees. The proper focus here is on whether the information in the record pertains to determining Mr. Aroeste's residency in 2012 and 2013 under the Treaty, not when the information was created or when it became a part of the record.

Nos. 25, 27. Insofar as portions of the administrative record relate to Mr. Aroeste's residency under the Treaty for tax years 2012 and 2013, they are relevant and within the permissible scope of discovery set forth in the District Court's September 26, 2022, Order.

The United States further states the bulk of the record is not relevant because it concerns liability for income taxes and information penalties not at issue in this lawsuit and that discovery should be limited exclusively to the assessment of FBAR penalties. Doc. No. 36 at 9. The United States claims it can parse the information in the record and produce that which it "deems relevant to the income tax treaty and the 2012, 2013 FBAR penalty" while at the same time withholding those portions that pertain to the assessment of Mr. Aroeste's residency under the Treaty but are somehow "not relevant to the FBARs." *See, e.g.*, Doc. No. 41 at 24:5-25:8, 28:25-30:22. Mr. Aroeste's counsel correctly notes residency under the Treaty is a single question that is not divisible into 'FBAR purposes' or 'income tax purposes.' Doc. No. 41 at 26:12-28:24, 31:3-32:23. There is simply no authority for the government's contention that application of the Treaty's test for tax residency differs on the basis of the taxes or penalties assessed against a taxpayer. Thus, although Mr. Aroeste's residency under the Treaty may be relevant to assessing liabilities not at issue in this case, the United States' argument creates an illusory distinction. In sum, assessment of the Title 26 (tax and information penalty) issues are resolved on the same factual basis as the Title 31 (FBAR penalty) issues in the audit. Doc. No. 36 at 6. The Court therefore concludes that all information related to determining Mr. Aroeste's residency under the Treaty in 2012 and 2013 is discoverable, not just that information related to the imposition of FBAR penalties.[4]

---

[4] Plaintiff's counsel has expressed concern about the United States construing the scope of relevant information narrowly, and thereby refusing to produce otherwise discoverable information. *See, e.g.*, Doc. No. 41 at 26:12-28:24, 30:24-32:23. The Court is confident the United States will abide by the ***Court's*** determination of what is relevant and discoverable as delineated in this Order. The Court's Order requires the United States to

The United States also argues evidence related to Mr. Aroeste's residency under the Treaty is not relevant to this case because Mr. Aroeste did not timely claim the benefits of the Treaty. *See* Doc. No. 41 at 13:25-15:1, 20:3-23:8. Litigants, however, are **not** required to supply proof of their claims as a precondition of obtaining discovery. *See generally Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 512-13 (D. Nev. 2020) (collecting cases); *accord Reed v. 1-800 Contacts, Inc.*, 3:12-cv-2359-JM-BGS, 2013 U.S. Dist. LEXIS 192753, at *5-6 (S.D. Cal. Mar. 29, 2013). Rather, discovery must merely be relevant to an asserted claim. Fed. R. Civ. P. 26(b)(1). Whether a litigant can satisfy the ultimate burden of persuasion is a factual question wholly separate from the discoverability of facts and information relevant to those claims. *Big City Dynasty*, 336 F.R.D. at 512-13.

The United States' final argument derives from a concern that plaintiffs are trying to obtain the entire IRS administrative record so they can use it for "leverage" in their case currently pending before the United States Tax Court or to prepare for a yet-unfiled action challenging the information penalties. *See* Doc. No. 36 at 8-9. The Court is responsible for determining whether the administrative record is discoverable in ***this*** case. In any event, the Court has already restricted the information that will be disclosed to the plaintiffs to that which is germane to this lawsuit and the FBAR penalties at issue. The Court, having

---

turn over any information that is relevant to determining Mr. Aroeste's residency under the Treaty, whether that information tends to inculpate or exculpate him in this matter. The Court also notes the United States has a subject matter expert on hand, namely, the IRS auditor who compiled the record at issue. Because the IRS was presumably competent to assess Mr. Aroeste's status under the Treaty when it imposed penalties against him, the IRS is likewise competent to assist the United States' counsel in determining the scope of responsive documents. The Court notes, however, that counsel for the United States may not rely entirely on the IRS to make this determination, because an attorney appearing before this Court has an independent obligation, imposed as a function of her signature on a party's discovery responses, to ensure all responses and disclosures comply with a party's discovery obligations. *See* Fed. R. Civ. P. 26(g). As such, counsel for the United States must be involved in the process of identifying responsive documents and must independently determine that any information withheld in discovery falls outside the scope of this Order.

concluded the portions of the record that pertain to Mr. Aroeste's status under the Treaty for tax years 2012 and 2013 are discoverable, accordingly **OVERRULES IN PART AND SUSTAINS IN PART** the United States objection that the administrative record exceeds the scope of discovery permissible under Rule 26.

### III.   CONCLUSION

The legal question of Mr. Aroeste's residency under the Treaty during tax years 2012 and 2013 is directly relevant to this matter. The IRS's administrative record contains information that is relevant to that issue because it contains the information the IRS considered in determining that Mr. Aroeste was a resident of the United States under the Treaty for tax years 2012 and 2013. It is, therefore, discoverable. However, only information in the record related to determining Mr. Aroeste's status under the Treaty during tax years 2012 and 2013 is relevant and subject to production because other tax years are not at issue in this matter.

Accordingly, **the United States must produce all portions of the administrative record, whether generated during the initial audit or during any subsequent proceedings, which are relevant to Mr. Aroeste's residency under the Treaty during tax years 2012 and 2013**. To the extent the United States seeks to withhold information on the basis of a privilege, the government must simultaneously produce a privilege log that fully complies with Paragraph IX of this Court's Chambers' Rules. The United States is ordered to produce all documents as delineated herein within 14 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 13, 2023

Hon. Karen S. Crawford
United States Magistrate Judge