DAVID A. HUBBERT
Deputy Assistant Attorney General

CHRISTINA T. LANIER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-765-4908 (v)
202-514-4963 (f)
Christina.T.Lanier@usdoj.gov

RANDY S. GROSSMAN
United States Attorney
Southern District of California
*Counsel for the United States of America*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ALBERTO AROESTE,
Plaintiff,

v.

UNITED STATES OF AMERICA,
Defendant.

CASE NO. 22-CV-682-AJB-KSC

UNITED STATES OF AMERICA,
Counterclaim Plaintiff,

v.

ALBERTO AROESTE,
Counterclaim Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AGAINST ALBERTO AROESTE**

**HEARING DATE: NOVEMBER 13, 2023**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................5

UNDISPUTED MATERIAL FACTS ....................................................................5

A. Alberto Aroeste Is a United States Person ....................................................5

B. Alberto Aroeste Did Not Timely Claim a Treaty Position for Either 2012 or 2013 6

C. Alberto Aroeste Held More Than $10,000 in Foreign Accounts in Both 2012 and 2013 ....................................................................................8

D. Alberto Aroeste Did Not File FBARs in 2012 and 2013 ..............................8

E. As of August 9, 2023, Alberto Aroeste Owes $21,851.76 in FBAR Penalties for 2012 and 2013 ....................................................................8

ARGUMENT ....................................................................................9

A. Summary Judgment Standard....................................................................9

B. As a United States Person, Alberto Aroeste Was Required to File FBARs in 2012 and 2013 ....................................................................................10

C. Because He Did Not File FBARs in 2012 and 2013, Alberto Aroeste Is Liable for FBAR Penalties for Both Years ..................................................13

CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................10, 11

*Aroeste v. United States*,
2023 WL 1974144 (S.D. Cal. Feb. 13, 2023)....................12

*Bittner v. United States*,
143 S.Ct. 713 (2023)....................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................10

*Estate of Khan v. Comm'r*,
T.C. Memo. 1998-22, 1998 WL 17536 (Jan. 20, 1998)....................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................10

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989)....................11

*Topsnik v. Comm'r*,
143 T.C. 240 (2014)....................12

*United States v. Boyd*,
991 F.3d 1077 (9th Cir. 2021)....................15

*United States v. Guy*,
1991 WL 253007 (S.D. Ohio Sept. 25, 1991)....................14

*United States v. Little*,
2017 WL 1743837 (S.D.N.Y. May 3, 2017)....................12, 14

*United States v. Little*,
828 Fed. App'x 34 (2d Cir. 2020)....................14

*United States v. Peacock*,
2018 WL 4468845 (S.D. Cal. Sept. 18, 2018)....................10

**Federal Statutes**

26 U.S.C. § 6013 ........ 13

26 U.S.C. § 6114 ........ 7, 8, 13

26 U.S.C. § 6114(a)(1) ........ 13, 14

26 U.S.C. § 7701(b)(1)(A) ........ 12

26 U.S.C. § 7701(b)(1)(A)(i) ........ 11, 12

26 U.S.C. § 7701(b)(6) ........ 12, 13, 14

31 U.S.C. § 3717 ........ 15, 16

31 U.S.C. § 5314 ........ 11, 14, 15

31 U.S.C. § 5314(b)(1) ........ 11

31 U.S.C. § 5321(a)(5) ........ 15

**Rules**

Fed. R. Civ. P. 56(a) ........ 10

**Regulations**

26 C.F.R. § 1.6013-1 ........ 14

26 C.F.R. § 301.7701(b)-1(b)(1) ........ 12

26 C.F.R. § 301.7701(b)-7(b) ........ 13, 14

26 C.F.R. § 301.7701(b)-7(c) ........ 14

31 C.F.R. § 103.24 ........ 15

31 C.F.R. § 103.32 ........ 15

31 C.F.R. § 1010.350(a) ........ 11, 14, 15

31 C.F.R. § 1010.350(b)(2) ........ 11, 12, 13

## INTRODUCTION

This suit is a last-ditch effort to avoid the consequences for Alberto Aroeste's failures to report his foreign bank accounts. Alberto Aroeste is a lawful permanent resident of the United States who failed to file reports of his foreign bank accounts (often called "FBARs") in 2012 and 2013. Because of those failures, he was assessed FBAR penalties for both years. He now seeks a refund of an amount he paid toward those penalties because he argues that he was exempt from the filing requirement under the United States – Mexico Income Tax Convention ("Treaty"). But he failed to assert this treaty position until he was audited by the IRS—years later than he could legally claim the position—and is not entitled to his claimed refund. Instead, the United States is entitled to summary judgment for the balance of the assessed debts.

## UNDISPUTED MATERIAL FACTS

The undisputed material facts ("UMFs"), largely taken from the Joint Stipulation of Facts (ECF No. 69), show that the United States is entitled to summary judgment for FBAR penalties against Alberto Aroeste:

### A. Alberto Aroeste Is a United States Person

1. Alberto Aroeste obtained United States lawful permanent residency in 1984. ECF No. 69 ("Stipulated Facts") ¶ 9–10; Exhibit F.[1]
2. Alberto Aroeste's United States lawful permanent resident status had not been administratively or judicially revoked on or before December 31, 2013. Stipulated Fact ¶ 11.
3. On or before December 31, 2013, Alberto Aroeste never submitted a Form I-407 to the United States Citizenship and Immigration Service, or before a diplomatic or consular officer of the United States, or before a U.S. immigration official at a Port of Entry of the United States. Stipulated Fact ¶ 12.

[1] Exhibits denoted by letter refer to those attached to the Stipulation of Facts, ECF No. 69. Exhibited denoted by number refer to those attached to declarations that accompany this motion.

4. On or before December 31, 2013, Alberto Aroeste never received notice from the United States Citizenship and Immigration Service that a final administrative or judicial determination had revoked or found his lawful permanent resident status had been abandoned. Stipulated Fact ¶ 13.
5. Alberto Aroeste has used his lawful permanent residency to enter the United States at least twenty-five times between January 1, 2012, and the present. Declaration of Trial Attorney Christina T. Lanier ("Lanier Declaration") ¶ 12; Exhibits 4, 5 to Lanier Declaration.

**B. Alberto Aroeste Did Not Timely Claim a Treaty Position for Either 2012 or 2013**

*Tax Year 2012*

5. On or about April 3, 2013, Alberto Aroeste filed an individual income tax return for tax year 2012 as married filing jointly with his spouse Estela. Stipulated Fact ¶ 3; Exhibit A.
6. Estela Aroeste was a United States citizen in 2012. Stipulated Fact ¶ 8.
7. With this return for 2012 filed on or about April 3, 2013, Alberto Aroeste did not submit a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b), raising Article 4 of the United States – Mexico Income Tax Convention. Stipulated Fact ¶ 3; Exhibit A.
8. On or about October 2, 2016, Alberto and Estela Aroeste submitted a purportedly corrected individual income tax return for tax year 2012 as married filing jointly. Stipulated Fact ¶ 5; Exhibit C.
9. With this return for 2012 submitted on or about October 2, 2016, Alberto Aroeste did not submit a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b), raising Article 4 of the United States – Mexico Income Tax Convention. Stipulated Fact ¶ 5; Exhibit C.

10. On or about October 12, 2016, Alberto Aroeste submitted a purportedly corrected individual income tax return for tax year 2012 as married filing separate. Stipulated Fact ¶ 6; Exhibit D (2012 second am return).

11. With this return for 2012 submitted on or about October 12, 2016, Alberto Aroeste submitted a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 and 7701(b), raising Article 4 of the United States – Mexico Income Tax Convention. Stipulated Fact ¶ 6; Exhibit D (2012 second am return).

12. By the time Alberto Aroeste submitted this 2012 return on or about October 12, 2016, the audits into his U.S. income tax returns and FBAR compliance had already begun. Stipulated Fact ¶ 6.

*Tax Year 2013*

13. On or about October 14, 2014, Alberto and Estela Aroeste filed an individual income tax return for tax year 2013 as married filing jointly. Stipulated Fact ¶ 4; Exhibit B.

14. Estela Aroeste was a United States citizen in 2013. Stipulated Fact ¶ 8.

15. With this return for 2013 filed on or about October 14, 2014, Alberto Aroeste did not submit a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b), raising Article 4 of the United States – Mexico Income Tax Convention. Stipulated Fact ¶ 4; Exhibit B.

16. On or about October 12, 2016, Alberto Aroeste submitted a purportedly corrected individual income tax return for tax year 2013 as married filing separate. Stipulated Fact ¶ 7; Exhibit E.

17. With this return for 2013 submitted on or about October 12, 2016, Alberto Aroeste submitted a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 and 7701(b), raising Article 4 of the United States – Mexico Income Tax Convention. Stipulated Fact ¶ 7; Exhibit E.

18. By the time Alberto Aroeste submitted this 2013 return on or about October 12, 2016, the audits into his U.S. income tax returns and FBAR compliance had already begun. Stipulated Fact ¶ 7.

**C. Alberto Aroeste Held More Than $10,000 in Foreign Accounts in Both 2012 and 2013**

19. In 2012 and 2013, Alberto Aroeste had a financial interest in or signature authority over the following accounts in Mexico:

| Alberto Aroeste's Mexican Accounts |
|---|
| Scotia Inverlat Casa de Bolsa S.A. (XXXX1378) |
| Casa de Bolsa Santander S.A. de C.V. (XX1106) |
| Grupo Financiero BBVA Bancomer S.A. (XXXXX93 |
| Grupo Financiero BBVA Bancomer S.A. (XXXXX93 |
| Banco Santander Mexico S.A. (XXXXXXX0803) |

Stipulated Fact ¶ 1; Exhibit 1 to Declaration of Internal Revenue Agent Chad A. Presnell (showing assessments made regarding the same account numbers).

20. In both 2012 and 2013, the aggregate balance of Alberto Aroeste's Mexican accounts exceeded $10,000 U.S. Dollars. Stipulated Fact ¶ 2.

**D. Alberto Aroeste Did Not File FBARs in 2012 and 2013**

21. Alberto Aroeste participated in the Offshore Voluntary Disclosure Program before later opting out. Stipulated Facts ¶ 57–63; Exhibits N–T.

22. Even so, Alberto Aroeste has never filed an FBAR for either year at issue. *See* Declaration of Internal Revenue Agent Reviewer/Tax Analyst Elizabeth C. Knight ¶ 3.

**E. As of August 9, 2023, Alberto Aroeste Owes $21,851.76 in FBAR Penalties for 2012 and 2013**

23. On May 12, 2020, a delegate of the Secretary of the Treasury assessed $50,000 in FBAR penalties against Alberto Aroeste for 2012. *See* Declaration of Chad

A. Presnell ("Presnell Declaration") ¶ 4 (noting penalties assessed on May 12, 2020); Exhibit 1 to Presnell Declaration, at 1.

24. On May 12, 2020, a delegate of the Secretary of the Treasury assessed $50,000 in FBAR penalties against Alberto Aroeste for 2013. *See* Presnell Declaration ¶ 4 (noting penalties assessed on May 12, 2020); Exhibit 1 to Presnell Declaration, at 2.

25. On July 23, 2020, the IRS sent Alberto Aroeste a Letter 3708, *Notice and Demand for Payment of FBAR Penalty*. *See* Presnell Declaration ¶ 4; Exhibit 2 to Presnell Declaration, at 2.

26. On May 2, 2022, Alberto Aroeste paid $3,004 toward his outstanding FBAR penalties. *See* Presnell Declaration ¶ 7–8.

27. As of August 9, 2023, Alberto Aroeste owes $21,851.76 for his outstanding FBAR penalties for 2012 and 2013. *See* Presnell Declaration ¶ 7; Exhibit 3 to Presnell Declaration.

## ARGUMENT

### A. Summary Judgment Standard

The United States is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *United States v. Peacock*, 2018 WL 4468845, at *1 (S.D. Cal. Sept. 18, 2018) (Battaglia, J.). A material fact is one that "under the governing substantive law . . . could affect the outcome of the case." *Peacock*, 2018 WL 4468845, at *1 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As the moving party, the United States bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence that demonstrates the absence of a genuine dispute as to any material fact. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the United States has met this initial responsibility, the burden shifts to the party opposing summary judgment to establish that there is a genuine dispute over a material fact. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 585-587 (1986). The opposing party cannot meet its burden simply by offering conclusory statements unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the opposing party cannot produce sufficient evidence to demonstrate that a triable issue of fact exists, the United States is entitled to summary judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 250.

Here, the undisputed material facts show that no triable issues of fact remain, and the United States is entitled to judgment as a matter of law. Alberto Aroeste was a "United States person" required to file FBARs for 2012 and 2013. Because he did not do so, the United States is entitled to judgment on the outstanding FBAR penalties assessed against him for those years.

**B. As a United States Person, Alberto Aroeste Was Required to File FBARs in 2012 and 2013**

Federal law requires every United States person who has a financial interest in, or signature authority over, a foreign financial account to report that relationship annually to the Internal Revenue Service. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a). The report is commonly called an "FBAR." The reporting requirement applies for any year in which the maximum aggregate balance of all the foreign financial accounts exceeds $10,000 at any time during the calendar year. Alberto Aroeste has admitted he had more than $10,000 in foreign accounts in both 2012 and 2013 (UMF ¶ 18), but the ultimate issue is whether he was a United States person in 2013 and 2013. He was.

Title 31, U.S.C., § 5314 allows the Secretary of the Treasury to create a "reasonable classification of persons subject to" the reporting requirements, including FBAR filings. 31 U.S.C. § 5314(b)(1). The regulation's definition of "United States person" includes "an individual who is a resident alien under 26 U.S.C. ("I.R.C.") § 7701(b) and the regulations thereunder." 31 C.F.R. § 1010.350(b)(2). In turn, I.R.C. § 7701(b)(1)(A)(i) defines "resident alien" to include anyone who is a lawfully admitted permanent resident any time during the calendar year, with no caveat regarding where

they lived or how long they were in the United States.[2] *See United States v. Little*, 2017 WL 1743837, at *3 (S.D.N.Y. May 3, 2017).

This Court has recognized that an individual is a lawful permanent resident for these purposes if they have been "lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with immigration laws" and this "status has not been revoked (and has not been administratively or judicially determined to have been abandoned)." *Aroeste v. United States*, 2023 WL 1974144, at *3 (S.D. Cal. Feb. 13, 2023) (Crawford, M.J.) (citing 26 U.S.C. § 7701(b)(1)(A)(i) & (6)); *Estate of Khan v. Comm'r*, T.C. Memo. 1998-22, 1998 WL 17536, at *9 n.11 (Jan. 20, 1998) (same).

Alberto Aroeste has admitted, and the evidence supports, that he obtained lawful permanent resident status prior to the years at issue. This status was never administratively or judicially revoked for the years at issue. UMF ¶ 2–4; *Topsnik v. Comm'r*, 143 T.C. 240, 256 (2014) (finding lawful permanent resident was still a United States person for tax purposes where he never formally abandoned his status, and it was not otherwise revoked); 26 C.F.R. § 301.7701(b)-1(b)(1) ("Resident status is deemed to continue unless it is rescinded or administratively or judicially determined to have been abandoned."). Thus, he was a lawful permanent resident under § 7701(b)(6), a resident alien under I.R.C. § 7701(b)(1)(A)(i), and a United States person under 31 C.F.R. § 1010.350(b)(2).

Alberto Aroeste argues that, even though he *was* a lawful permanent resident during both years, he *was not* a United States person because he was subject to the United States – Mexico Income Tax Convention. Under the Internal Revenue Code, "an

[2] "Resident alien" also includes a person who meets the I.R.C.'s "substantial presence" test or makes a "first year election," but the Code does not require all three options—the definitions are in the disjunctive. *See* 26 U.S.C. § 7701(b)(1)(A) ("An alien individual shall be treated as a resident of the United States with respect to any calendar year if (and only if) such individual meets the requirements of clause (i), (ii), *or* (iii).") (emphasis added).

individual shall cease to be treated as a lawful permanent resident of the United States if such individual (1) commences to be treated as a resident of a foreign country under the provisions of a tax treaty between the United States and the foreign country, (2) does not waive the benefits of such treaty applicable to residents of the foreign country, and (3) notifies the Secretary [of the Treasury] of the commencement of such treatment." 26 U.S.C. § 7701(b)(6).

So to establish solely Mexican residency under the treaty—and thus avoid the reporting requirements required of "United States persons"—Alberto Aroeste had to have filed a timely income tax return (Form 1040NR) as a non-resident (not a United States person) with a Form 8833, Treaty-Based Return Position Disclosure Under Section 6114 or 7701(b). 26 U.S.C. § 6114(a)(1); 26 C.F.R. § 301.7701(b)-7(b); *see also* 26 U.S.C. § 7701(b)(6) (stating that a taxpayer may only claim a treaty position if they have not waived it). He did not do so, and thus cannot establish that he notified the IRS of his desire to be treated solely as a resident of Mexico.

Although he filed timely returns for 2012 and 2013, Alberto Aroeste filed Forms 1040 as a married taxpayer filing jointly with Estela Aroeste. UMF ¶¶ 5 (2012), 12 (2013). By filing with his spouse, who was a U.S. citizen during both years (UMF ¶¶ 6, 14), he implicitly labeled himself as a resident alien, and thus as a United States person. *See* 26 U.S.C. § 6013(a)(1) ("[N]o joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien."); 31 C.F.R. § 1010.350(b)(2) (defining United States person to include resident alien).

Even still, Alberto Aroeste also did not submit with these returns any Form 8833 to notify the IRS of his desired treaty position. UMF ¶¶ 7 (2012), 15 (2013). He did not submit this form until October 12, 2016, when he submitted an amended tax return for both years at issue as married filing separately. UMF ¶¶ 10–11 (2012), 16–17 (2013).

These returns, through which Alberto Aroeste asserted the treaty position *for the first time,* were submitted well past the deadlines for timely filed tax returns for each year (October 15, 2013, for tax year 2012, and October 15, 2014, for tax year 2013) and thus

well past the time to claim a treaty position.[3] *See* 26 U.S.C. § 6114(a)(1); 26 C.F.R. § 301.7701(b)-7(b), (c) (requiring the Form 1040NR and Form 8833 be filed before the deadline for filing an income tax return); *Little*, 2017 WL 1743837, at *3. Because Alberto Aroeste failed to file a timely return asserting a treaty position, he failed to "notif[y] the Secretary of the commencement of such treatment" and waived his ability to assert a treaty position for both years. 26 U.S.C. § 7701(b)(6); *see also United States v. Little*, 828 Fed. App'x 34, 38 (2d Cir. 2020) (finding that a lawful permanent resident who failed to demonstrate to the IRS that he should be "treated as a resident of a foreign country under the provisions of a tax treaty" was also a United States person (quoting 26 U.S.C. § 7701(b)(6))).

Thus, absent a valid treaty position, Alberto Aroeste's lawful permanent resident status dictates that he was a United States person during both 2012 and 2013. And in turn, as a United States person, he needed to file FBARs. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a). Because he failed to file these FBARs, he is liable for the ensuing penalties assessed against him.

**C. Because He Did Not File FBARs in 2012 and 2013, Alberto Aroeste Is Liable for FBAR Penalties for Both Years**

The Bank Secrecy Act requires that a United States person file an FBAR listing each foreign financial institution with which they have a relationship for any year where the maximum aggregate balance of their foreign accounts exceeds $10,000 USD. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a). Although Congress did not define what constitutes a relationship with a foreign financial account, the implementing regulations

---

[3] These returns were also not accepted by the IRS. The decision to accept amended returns is a "matter of the internal administrative discretion of the IRS." *United States v. Guy*, 1991 WL 253007, at *3 (S.D. Ohio Sept. 25, 1991). The attempts by Alberto Aroeste to sever his return from his spouse were late and thus unacceptable. "For any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired." 26 C.F.R. § 1.6013-1.

make clear that "relationship" is a United States person's "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a); *see also* 31 C.F.R. §§ 103.24, 103.32. For 2012, the required form was Treasury Form TD-F 90-22.1. For 2013, the form was FinCEN Form 114.

Section 5321(a)(5) of the Bank Secrecy Act (Title 31) authorizes imposing civil penalties for a failure to comply with the reporting requirements of § 5314—i.e., when the person maintaining a foreign account fails to report each account on a timely filed FBAR despite having an obligation to do so. These penalties are known as "FBAR penalties." For violations involving the non-willful failure to report the existence of an account, the maximum amount of the FBAR penalty that may be assessed is $10,000 per violation. 31 U.S.C. § 5321(a)(5)(B)(i). The penalty set forth under 31 U.S.C. § 5321(a)(5)(B) is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

Because Alberto Aroeste was a United States person in both 2012 and 2013 he needed to file FBARs for both years. He failed to do so. UMF ¶¶ 22. As a result, the IRS was authorized to assess penalties against him under 31 U.S.C. § 5321(a)(5). Prior to 2023, the IRS treated each unreported or untimely reported account as a violation subject to the FBAR penalty, and thus assessed one violation per account. *See, e.g.*, *Bittner v. United States*, 143 S.Ct. 713, 718–19 (2023). Consistent with this practice, a delegate of the Secretary of the Treasury assessed $10,000 for each account Alberto Aroeste failed to report and did so for both years. UMF¶¶ 23–24. The resulting assessment was for $100,000 for failing to file FBARs for 2012 and 2013 reporting his five foreign accounts. *Id.*

But in *Bittner*, the Supreme Court held that a violation under the statute is instead each failure to file an FBAR or failure to timely file an FBAR. *Bittner*, 143 S.Ct. at 720. This outcome was consistent with the Ninth Circuit's ruling in *United States v. Boyd*, 991 F.3d 1077, 1086 (9th Cir. 2021). While the initial assessments against Alberto Aroeste far exceeded $10,000 per unfiled FBAR, the United States only sought to collect from

Alberto Aroeste $10,000 per year (plus interest and penalties and minus payments). *See* ECF No. 11 ¶ 109, 109 n.2. And post-*Bittner*, the United States still only seeks to collect this amount.

As of August 9, 2023, taking into account accruing interest and penalties and his one payment, Alberto Aroeste owes $21,851.76 for his failure to file FBARs in 2012 and 2013. UMF ¶ 27.

## CONCLUSION

Despite his late-breaking and last-ditch efforts to avoid the consequences of his actions, Alberto Aroeste is a United States person who was required to file FBARs for 2012 and 2013. When he failed to do so, a delegate of the Secretary of the Treasury lawfully assessed FBAR penalties against him. This Court should find Alberto Aroeste owes the United States $21,851.76 as of August 9, 2023, plus interest and penalties under 31 U.S.C. § 3717 and post-judgment interest, for his failure to file FBARs in 2012 and 2013.

Dated: August 11, 2023.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Christina T. Lanier*
CHRISTINA T. LANIER
Trial Attorney, Tax Division
U.S. Department of Justice

RANDY S. GROSSMAN
United States Attorney
Southern District of California

*Counsel for United States of America*