UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO AROESTE and ESTELLA AROESTE,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Defendant. | Case No.: 22-cv-682-AJB-KSC<br><br>**ORDER ON JOINT DISCOVERY MOTION [Doc. No. 63]** |

## I.  Introduction

This is a relatively low-stakes case concerning roughly $3,000 in penalties paid to the IRS, but the discovery dispute presently before the Court, in which the parties dispute whether nine pages of documents have been appropriately redacted, has managed to raise not one but two questions of first impression in the Ninth Circuit. The first question presented is this: does 26 U.S.C. section 6103, a relatively obscure provision of the Internal Revenue Code, require the United States to withhold documents in discovery because those documents contain information gleaned from the tax returns of third parties? Although the Court suspects the answer is "no," the Court need not resolve this complicated issue because the second question presented by the parties' discovery dispute ultimately proves dispositive. That second question is as follows: are legal memoranda prepared by attorneys

in the IRS Office of Chief Counsel during taxpayer audits protected from disclosure by the attorney-client privilege, or are they discoverable because they constitute so-called "agency law"? Because the Court concludes the memoranda are privileged under Ninth Circuit law, plaintiff's Motion to Compel production of the two memoranda at issue must be **DENIED**.

## II.     Factual and Procedural History

Plaintiffs Alberto and Estella Aroeste sued the United States under the Little Tucker Act to recoup penalty payments (and to discharge their liability for penalties still outstanding) imposed by the IRS because the Aroestes did not file a Report of Foreign Bank and Financial Accounts ("FBAR") for the years 2012 and 2013. Doc. No. 1 ¶ 9. The IRS assessed the FBAR penalties at issue after an extensive administrative audit of certain of plaintiffs' tax years through 2015. *See* Doc. No. 1 ¶¶ 11, 40-44. The United States counterclaimed against plaintiffs to recover the balance of unpaid penalties. Doc. No. 11.[1] The Aroestes' total liability to the federal government following the audit was approximately $3,000,000, but the FBAR penalties at issue in this case account for only a small portion of that sum because the bulk of the Aroestes' tax and penalty liability arose from unfiled information returns and unpaid taxes. *See generally* Doc. No. 42 at 2. Neither the unpaid taxes nor the penalties for failing to file information returns are at issue in this lawsuit. *See id.*

Both plaintiffs previously sought discovery of the entire administrative record generated during the IRS audit. *See* Doc. No. 36. The Court granted plaintiffs' motion to compel in part, ordering defendant to produce "all portions of the administrative record . . . which are relevant to Mr. Aroeste's residency under the [United States – Mexico Income Tax] Treaty during the tax years 2012 and 2013." *See* Doc. No. 42 at 12. As the Court noted in its earlier Order, Mr. Aroeste's residency under the Treaty is a dispositive

---

[1]     The parties have settled the matter in part, resolving the disputed penalties assessed against Estella Aroeste, and all claims related to Estella have been dismissed upon the parties' joint motion. *See* Doc. Nos. 58, 64, 65.

1 legal question in this case that determines whether FBAR penalties were rightly assessed
2 against him. *See id.* at 7. Defendant produced the discovery as ordered. *See* Doc. No. 48.
3 The parties now jointly move the Court to resolve a dispute arising from that document
4 production. *See* Doc. No. 63 (the "Joint Motion"). The parties specifically dispute whether
5 defendant appropriately redacted two IRS memoranda that are part of the administrative
6 record. *See id.* at 2, 5.

The parties have no real disagreement over the nature and substance of the memoranda, which together total only nine pages. *See* Doc. No. 63 at 2, 6. Each memorandum was drafted by a staff attorney with the IRS's Office of Chief Counsel ("OCC") at the request of an IRS field agent conducting an audit of third-party taxpayers, and each memo discusses specific issues that arose during those audits. *See id.*[2] As the parties note with reference to their evidentiary submissions, the memoranda were used by the agent auditing the Aroestes because specific issues pertaining to the Aroestes also arose during the audits of the third-party taxpayers. Accordingly, the agent auditing the Aroestes consulted the old memos for guidance on the proper application of various tax law doctrines. *See* Doc. No. 63 at 3, 6, Ex. 1, Ex. 2. Plaintiffs have not seen the redacted portions of the documents, but they contend defendant has redacted more information than is warranted by controlling law—although they concede at least some information can be redacted to avoid the disclosure of third-party taxpayer information. *Id.* at 4. Defendant contends it has only redacted those portions of the memoranda to which plaintiffs are not entitled. *Id.* at 9. Neither party objects to the Court reviewing the material in camera to resolve the dispute, and defendant lodged the documents at issue for the Court's review. *See* Doc. No. 60.

////
////

---

[2]  As the IRS's Internal Revenue Manual indicates, the OCC is generally responsible for providing legal advice to the IRS. *See* IRM 33.1.1 (August 11, 2004).

### III. Whether Defendant Properly Redacted the Two Memoranda

A party seeking discovery may move the Court to issue an order compelling production. Fed. R. Civ. P. 37(a). This Court has broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). If the information sought is relevant, the party resisting discovery bears the ultimate burden of convincing the Court discovery should not be permitted. *See V5 Techs v. Switch, Ltc.*, 334 F.R.D. 306, 309 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Based on the parties' Joint Motion, the Court discerns two separate bases for defendant's decision to withhold the information. Defendant claims (A) 26 U.S.C. section 6103 prohibits disclosure of the redacted portions of the memoranda; and (B) the redacted portions of the document fall within the attorney-client privilege. The Court will address both claims.

### (A) Whether 26 U.S.C. Section 6103 Supplies a Basis for an Objection

Defendant contends redaction is necessary to prevent the disclosure of "return information" that is confidential by statute. *See* Doc. No. 63 at 5. Under the Internal Revenue Code, income tax returns and "return information" are confidential and cannot be disclosed by the IRS. *See* 26 U.S.C. § 6103(a). The non-disclosure requirement at issue here has numerous statutory exceptions. *See* 28 U.S.C. § 6103(c)-(o). But the Aroestes, as private litigants in a civil matter, are not among the parties to whom section 6103 expressly authorizes disclosure of returns and return information. *See id.*

"Return information," as used in the statute, carries the following broad definition:

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this

> title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,
> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
> (C) any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and
> (D) any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement . . . .

*See* 26 U.S.C. § 6103(b)(2). "[B]ut ['return information'] does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *See id.*

The Supreme Court has construed the term "return information" as it is used in section 6103 and concluded the broad definition encompasses (and accordingly forbids disclosure of) essentially ***any*** information in the IRS's possession that is particular to a taxpayer and that taxpayer's tax returns. *See Church of Scientology v. IRS*, 484 U.S. 9, 15-17 (1987); *see also Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997) (noting "return information" is not limited solely to information that directly identifies a taxpayer).

In this case, the government contends it "redacted the identities and all 'return information' of . . . third-party taxpayers," but "did not redact portions that were not personally identifying material or return information." Doc. No. 63 at 6. Plaintiffs believe defendant's "redactions as they currently stand go far beyond those necessary to comply with section 6103." *Id.* at 5. The parties do not dispute, and the Court's in camera review has confirmed, that virtually all case-specific analysis was removed from the memoranda. *See id.* at 4-5, 7. The parties, in jointly requesting in camera review, want the Court to review the redacted, case-specific information and decide whether it comprises "return information" within the scope of section 6103. The parties both assume it is proper for the United States to object based on section 6103, and they only disagree about the scope of

what can be withheld under the statute. But this Court is not convinced section 6103 applies in discovery proceedings. If it does not apply, there is nothing for the Court to decide.

As the parties both note, it is well settled that section 6103 prevents the disclosure of "return information" in response to requests under the Freedom of Information Act ("FOIA"). *See Church of Scientology of Cal. v. I.R.S.*, 484 U.S. 9 (1987); *Shannahan v. IRS*, 672 F.3d 1142 (9th Cir. 2012); *accord Tax Analysts v. I.R.S.*, 117 F.3d 607 (D.C. Cir. 1997); *Taxation with Representation Fund v. I.R.S.*, 646 F.2d 666 (D.C. Cir. 1981). But this is not a FOIA case. Plaintiff has asked for the documents through a discovery request made under the Federal Rules of Civil Procedure. This Court is unaware of a binding Supreme Court or Ninth Circuit case that resolves the issue of whether section 6103 provides a basis to withhold ***discovery***.[3]

The persuasive authority on the issue goes both ways. Some courts, none of which bind this Court, have implicitly construed the statue as permitting the government to withhold "return information" in discovery. *See Cencast Servs., L.P. v. United States*, 91 Fed. Cl. 496, 509 (2010); *First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 312, 322-23 (2000). Neither court analyzed the issue at the trial level. They both just assumed section 6103 supplied the government with a viable discovery objection. When both those decisions went up on appeal, the Federal Circuit did not address the issue at all. *See generally Cencast Servs., L.P. v. United States*, 729 F.3d 1352 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2841 (2014); *First Heights Bank v. United States*, 422 F.3d 1311 (Fed.

---

[3]   As concerns whether authority is binding or persuasive: because this is a tax case arising under the Little Tucker Act, appellate jurisdiction lies with the Ninth Circuit. *See* 28 U.S.C. § 1295(a)(2). Had this case been filed in the Court of Federal Claims, which has concurrent jurisdiction over Little Tucker Act claims under 28 U.S.C. section 1346(a), appellate jurisdiction would lie with the Federal Circuit. *Id.* This Court will accordingly follow the Ninth Circuit as binding authority, but the decisions of the Federal Circuit are strongly persuasive.

Cir. 2005). This Court is not inclined to blindly follow decisions from outside the Ninth Circuit that provide no analysis of any kind on a potentially dispositive legal question.

In contrast, the District Court for the District of Columbia, which also does not bind this Court, went the other way and concluded section 6103 does ***not*** prevent discovery of "return information" in a civil case. *See McSurely v. McAdams*, 502 F. Supp. 52 (D.D.C. 1980). The court relied on the history of section 6103, which was enacted to prevent political bullying by actors in the executive branch of the federal government from gaining access to the personal information included in tax returns filed by private citizens, a practice that had become endemic during certain political administrations of the late 60s and early 70s. *See id.* at 56; *accord Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993); *Stokwitz v. United States*, 831 F.2d 893, 894-95 (9th Cir. 1987); *Heathman v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974). The court also concluded that any residual privacy concerns can be managed by "properly tailored protective orders" that would prevent disclosure of any third parties' personal information. *McSurely*, 502 F. Supp. at 56-57.

Although this Court is not bound by *McSurely*, the Court finds the logic and reasoning of *McSurely* persuasive because it analyzed what Congress intended when it enacted section 6103 rather than simply assuming the statute applies in the context of a discovery dispute. The purposes of section 6103 are not implicated in this case, however, because the Aroestes are not Nixon-era hatchetmen engaged in the Cold War skullduggery that prompted Congress to enact section 6103 in the first place. Accordingly, the Court concludes section 6103 is likely not a valid basis for objecting to discovery. Nevertheless, the Court need not resolve this tricky section 6103 question because, as the Court will explain, the issue of privilege proves dispositive.

**(B) The Redacted Portions of the Memoranda Fall Within the Attorney-Client Privilege and Are Not Discoverable**

Even if 26 U.S.C. section 6103 is wholly inapplicable to discovery, defendant could properly withhold the information if it were protected by a privilege. Accordingly,

defendant argues the two memoranda at issue here must be redacted because they include "confidential communications and legal advice [that] are protected by the attorney-client privilege." *See* Doc. No. 31 at 5. Plaintiffs conversely contend the memoranda contain "agency law," which is discoverable because "the government cannot shield by claim of privilege . . . the established rules it enforces upon the public." *See* Doc. No. 63 at 2-3. Plaintiff cites three cases to support this position: *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997); *Taxation with Representation Fund v. IRS*, 646 F.23d 666, 683 (D.C. Cir. 1981); and *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).[4]

Neither the Supreme Court nor the Ninth Circuit has issued a decision on all fours with this case or which addresses the specific "agency law" question presented by plaintiff. This Court must therefore approach the question from the top down. Privileged material is generally protected from discovery. *See* Fed. R. Civ. P. 26(b)(1). Federal common law controls any privilege claim made in this case. *See* Fed. R. Evid. 501; *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 656 (C.D. Cal. 2005).

Under federal law:

> The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. The attorney-client privilege exists where: (1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal

---

[4]   Although plaintiffs cite *Taxation with Representation Fund* for the proposition that "agency law" is discoverable over an attorney-client privilege objection, that case does not actually address the attorney-client privilege at all. *See generally* 646 F.2d 666. Rather, the court in *Taxation with Representation Fund* determined whether several different categories of IRS internal memoranda were protected by the "deliberative process privilege." *See id.* at 681-84. Because the deliberative process privilege is not at issue in this case, plaintiff's citation to *Taxation with Representation Fund* is unpersuasive.

> adviser, (8) unless the protection be waived. Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject.

*See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (internal citations and quotation marks omitted). Defendant bears the ultimate burden of proving the privilege applies. *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000)).

As the Court will explain, *Tax Analysts* and *Coastal States* are closely on point with this case. Although neither out-of-circuit case binds this Court, the Court will nonetheless consider them as persuasive authority. The Court will first determine whether *Tax Analysts* and *Coastal States* correctly state the law or whether they conflict with any binding authority. Having decided what law to follow, the Court will determine whether the material is privileged under the appropriate legal standards.

**(1) This Court Will Not Follow *Tax Analysts* and *Coastal States* Because They Conflict with Ninth Circuit Law**

Plaintiffs claim *Tax Analysts* is "the seminal case" on the issue of discovering "agency law." *See* Doc. No. 63 at 2. In *Tax Analysts*, the IRS claimed attorney-client privilege over Field Service Advice memoranda ("FSAs"). *See* 117 F.3d at 618. FSAs are memoranda prepared by attorneys working in the Office of Chief Counsel at the request of IRS field agents. *Id.* at 609. "Each FSA includes a statement of issues, a conclusions section, a statement of facts, and a legal analysis section." *Id.* FSAs are objective analyses that candidly discuss both the strengths and weaknesses of a particular case. *Id.* Although FSAs are not binding on the IRS, they are "held in high regard" by field personnel and "generally followed" by field agents conducting audits and other field work. *Id.*

The *Tax Analysts* court, following its earlier decision in *Coastal States*, held FSAs were not per se privileged. *Id.* at 619. The court reasoned objective legal analyses by a government lawyer on behalf of a government agency fundamentally differ from the attorney-client communications between private litigants and their counsel because the

agency lawyer "rendering the opinion in effect is making law," and the government cannot treat as privileged this "body of private law, applied routinely as the government's legal position in its dealings with taxpayers." *Id.* At the same time, the court noted (but did not decide given the empty record) that FSA's *might* be privileged in whole or in part if they "reveal[ed] confidential information transmitted by field personnel regarding the scope, direction, or emphasis of audit activity." *Id.* at 619-20 (internal quotation marks omitted).

In *Coastal States*, the Department of Energy claimed privilege over "memoranda from regional counsel to auditors working in [the] DOE's field offices, issued in response to requests for interpretations of regulations within the context of particular facts encountered while conducting an audit of a firm." 617 F.2d at 858. The Department conducted the audits at issue in the case to ensure oil and gas producers were complying with regulations for petroleum pricing and allocation. *Id.* If the auditors encountered any problems with regulatory interpretation, "a request for advice would be sent to the regional counsel, couched in a specific factual context, either real or hypothetical" and the response "would be a legal memorandum, interpreting any applicable regulations in light of those facts, and often pointing out additional factors which might make a difference in the application of the regulation." *Id.* at 858-59.

The court held the memoranda fell outside the attorney-client privilege. *Id.* at 863. The court analogized the memoranda to "question and answer guidelines which might be found in an agency manual" that do not contain "'confidential information' which an auditor might have communicated to regional counsel." *Id.* The Court distinguished a situation in which the United States negotiated a contract with a private company, in which case "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Id.* (citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977)).

The record in this matter demonstrates the memoranda at issue in this dispute are substantially similar to the FSAs at issue in *Tax Analysts*. Like the FSAs in *Tax Analysts*, the memoranda here include a statement of issues, a conclusions section, a statement of

facts, and a legal analysis section. They were prepared by attorneys working in the Office of Chief Counsel at the request of IRS field agents. The memoranda here both present objective applications of tax law provisions to the facts presented during taxpayer audits, and they advise the field agents on the most probable result based on the taxpayers' actions (in both instances presenting potential alternative courses of conduct the taxpayers and the IRS might follow). The record in this case does not support a finding one way or the other as to how "authoritative" these memoranda are in a ***general*** sense, but the exhibits submitted by the parties clearly demonstrate the IRS auditors followed the analyses contained in both memoranda in multiple cases; with IRS agents calling one "a repeat issue" and as to the other saying "[w]e have dealt with situations like this before." *See* Doc. Nos. 63-1, 63-2.

Similarly, the description of the memoranda at issue in *Coastal States* closely tracks the memoranda at issue here. Like the memoranda in *Coastal States*, the memoranda in this case entered the administrative record because the auditors encountered problems applying statutes and regulations to the Aroestes, and they sent out a request for advice to the OCC couched in a specific factual context. OCC's response came in the form of a legal memorandum objectively interpreting the facts as they pertain to the plaintiffs.

This Court concludes, based on its independent research, that none of the Ninth Circuit's decisions stand on all fours with this case or address the questions presented in *Tax Analysts* and *Coastal States*. Some district courts within the jurisdiction of the Ninth Circuit have followed the *Tax Analysts* and *Coastal States* decisions, overruling privilege objections for intra-agency educational and training resources (generated by legal counsel working at the agency) when the material at issue included legal analysis based on hypothetical situations. *See ACLU of N. Cal. v. FBI*, 146 F. Supp. 3d 1161, 1168 (N.D. Cal. 2015), *rev'd on other grounds*, 881 F.3d 776 (9th Cir. 2018); *ACLU of San Diego & Imperial Ctys. v. U.S. Dep't of Homeland Sec.*, 8:15-cv-229-JLS-RNB, 2017 WL 9500949, 2017 U.S. Dist. LEXIS 222216, at *27-28 (C.D. Cal. Nov. 6, 2017). Other courts, without considering the "seminal" D.C. Circuit cases on which the plaintiffs rely here, have applied

the privilege to correspondence between an IRS revenue agent collecting tax liabilities and an attorney in the OCC providing "legal advice concerning [the agent's] collection of . . . outstanding tax liabilities, and the alter ego or successor liability status of entities that might be pursued for collection." *See Trucept, Inc. v. IRS*, 15-cv-447-BTM-JMA, 2017 WL 2869531, 2017 U.S. Dist. LEXIS 103641, at *17-19 (S.D. Cal. July 5, 2017); *Am. Marine, LLC v. IRS*, 15-cv-455-BTM-JMA, 2017 WL 3194167, 2017 U.S. Dist. LEXIS 118107, at *16-18 (S.D. Cal. July 26, 2017).

The two *ACLU* cases are factually distinguishable because the documents at issue here are legal memoranda analyzing case-specific facts rather than training materials explicitly prepared for general usage by agency personnel. *American Marine* and *Trucept* might be factually closer, since it appears from those cases that OCC lawyers were advising field agents during an administrative audit. Both decisions, however, provide very little analysis to support the conclusion the privilege applies, and neither decision addresses the issues presented by *Tax Analysts*. Moreover, it is not clear whether the documents at issue in *American Marine* and *Trucept* were memoranda advising on how the agency would treat taxpayers generally, which would be discoverable "agency law" under *Tax Analysts*, or if they were the kind of confidential information transmitted by field personnel regarding the scope, direction, or emphasis of audit activity the *Tax Analysts* court would have considered privileged. The Court, accordingly, declines to follow either set of cases.

The most salient critique of *Tax Analysts* and *Coastal States* comes from the Court of Federal Claims. *See Cencast Servs., L.P. v. United States*, 91 Fed. Cl. 496 (2010). In *Cencast*, the court noted both *Tax Analysts* and *Coastal States* relied on a body of D.C. Circuit case law focusing on whether the **information** communicated between the agency attorney and the agency is confidential rather than on whether the **communication itself** is made in confidence between attorney and client notwithstanding the potentially public nature of the information conveyed. *See id.* at 503-04. Unlike the D.C. Circuit, the *Cencast* court noted the Federal Circuit treats any confidential communication between an attorney and a client as privileged, even if that communication includes information that is not itself

strictly confidential. *Id.; see also Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 313 ("[U]nlike the D.C. Circuit . . . the Federal Circuit has never expressly limited the attorney-to-client communications privilege to communications revealing confidential information, as opposed to confidential communication.").

After distinguishing *Tax Analysts* and *Coastal States* based on the differing tests for privilege, the *Cencast* court upheld privilege claims over a number of documents, including several IRS field memoranda not meaningfully different from the documents at issue in this case. *See Cencast Servs.*, 91 Fed. Cl. at 505-08. The court reasoned that, under Federal Circuit law, "[c]onfidential communications between agency personnel and agency attorneys may be privileged even if the underlying information is not confidential in nature." *Id.* at 504. If the Ninth Circuit test for privilege is indistinguishable from the test used in the Federal Circuit, then the logic of *Cencast Services* suggests that OCC memoranda are protected by the attorney-client privilege.

In the Ninth Circuit, the attorney-client privilege protects against the compelled disclosure of confidential communications between attorney and client regardless of whether the factual information conveyed is confidential or discoverable by other means. *See Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010); *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001); *Dolby Labs. Licensing Corp. v. Adobe, Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019); *Methode Elecs., Inc. v. Finisar Corp.*, 205 F.R.D. 552, 556 (N.D. Cal. 2001). Thus, this Circuit's privilege law is more in accord with the Federal Circuit's doctrines than it is with the D.C. Circuit's. The legal basis for *Tax Analysts* and *Coastal States* decisions is incompatible with controlling precedent in the Ninth Circuit because whether the information conveyed in the legal memoranda was kept strictly confidential within the agency is immaterial to whether the communications themselves are privileged. Unless and until the Ninth Circuit expressly adopts the logic of *Tax Analysts* and *Coastal States* as an exception to its attorney-client privilege jurisprudence, this Court is bound to reject the D.C. Circuit's case law. Accordingly, in this Circuit, agency legal

memoranda prepared for the purpose of giving legal advice during an audit are protected by the attorney-client privilege if they otherwise fit the Ninth Circuit's test for privilege.

### (2) Applying Ninth Circuit Law, the Memoranda Are Protected by the Attorney-Client Privilege

In the Ninth Circuit, government agencies may claim the attorney-client privilege when the agencies receive legal advice from government lawyers. *See generally Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997); *accord Coastal States*, 617 F.2d at 863; *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 91 (2007); *cf. NLRB v. Sears, Roebuck & Co*, 421 U.S. 132, 154 (1975) (noting "case law clearly makes the attorney's work-product rule of *Hickman v. Taylor*, 329 U.S. 495 (1947), applicable to Government attorneys in litigation"). For defendant to support its privilege claim, the production of a privilege log (optionally coupled with in camera review) is generally sufficient to sustain a claim of privilege under Ninth Circuit law. *See Dole v. Milona*, 889 F.2d 885, 890 (9th Cir. 1989).

Defendant produced a privilege log that identifies the documents by Bates number, document type, author, and recipient; provides a brief description for the basis of the privilege claim; and states whether the document was withheld in whole or in part. Defendant also lodged the documents at issue for in camera review, and it appropriately highlighted the information claimed to be privileged. Both the privilege log and the documents themselves indicate the memoranda constitute communications from OCC attorneys to IRS field agents in which the field agents establish they are seeking legal advice from professional legal advisors in their capacity as such. Moreover, the memoranda expressly indicate they are confidential and must be kept so to preserve a privilege, which establishes the "confidential communication" element of the attorney-client privilege. The two documents thus present a straightforward application of the attorney-client privilege, and this Court must only determine if the privilege has been waived.

The attorney-client privilege protects entire communications from disclosure. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). The "communications" at issue

here are the two memoranda *in their entirety*, each of which was drafted by an OCC attorney and directed to an IRS agent working in the field. The IRS has disclosed those portions of the memoranda which discuss the applicable law in a general sense and withheld those portions applying that law to the facts of the particular cases. But an attorney's legal advice covers briefing his client on "what the law is" just as much as it covers briefing the client on how the law should be applied in a particular case. If any part of these documents were privileged, then all parts of the document are privileged. Defendant chose to reveal *some* of these privileged documents to plaintiffs, but it withheld certain information.

The adage about using the privilege as both a "shield" and a "sword" prevents parties from selectively disclosing privileged information such that good evidence is presented to the other party while adverse facts remain concealed behind the privilege. *See generally United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1121-22 (9th Cir. 2020); *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see also Elec. Sci. v. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("[A] sophisticated party who intentionally discloses the most significant part of an otherwise privileged communication, in an act calculated to advance that party's commercial interests, cannot establish, as the law would require, that the party reasonably believed that it would be able to preserve the confidentiality of the other parts of the communication."); *accord Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427 n.13 (3d Cir. 1991) ("When a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary."); *First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 312, 316 (2000) ("When a party discloses privileged material for strategic purposes, this may imply a waiver of privilege with respect to all other communications on the same subject.").

The kind of "unfairness" required for a privilege waiver here is not met simply by showing plaintiff some of the privileged material, but it would be met if defendant tried to

15

22-cv-682-AJB-KSC

use the unredacted portions of the documents against plaintiffs while at the same time withholding the redacted portions of the documents as privileged. *See Electro Sci. Indus v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997); *Volcan Grp., Inc. v. T-Mobile USA, Inc.*, C10-711 RSM, 2011 U.S. Dist. LEXIS 142159, at *8-9 (W.D. Wash. Dec. 9, 2011); *cf. Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (holding a district court properly precluded a litigant from relying on an "advice of counsel" defense when he asserted the attorney-client privilege as a means of frustrating discovery into the factual basis of the defense).

At this point, the record before this Court does not show defendant seeks to use the unredacted portions of the memoranda as a means of defeating plaintiffs' claims while at the same using privilege to prevent plaintiffs from fully exploring the contents of the documents. Accordingly, the Court finds fairness does not require disclosure of the material withheld as privileged, and the Court does not find defendant has waived the privilege. Defendant's attorney-client privilege objection is **SUSTAINED**.

### IV.    Conclusion and Order

The Court has concluded the redacted portions of the two memoranda at issue fall within the attorney-client privilege. Accordingly, the Court need not determine whether section 6103 supplies a valid basis for objection. Because defendant's objection on the basis of the attorney-client privilege is sustained, plaintiff's motion to compel production of the redacted portions of the two documents is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 15, 2023

Hon. Karen S. Crawford
United States Magistrate Judge