DAVID A. HUBBERT
Deputy Assistant Attorney General

CHRISTINA T. LANIER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-765-4908 (v)
202-514-4963 (f)
Christina.T.Lanier@usdoj.gov

ANDREW R. HADEN
Acting United States Attorney
Southern District of California
*Counsel for the United States of America*

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERTO AROESTE,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant.<br>_____<br>UNITED STATES OF AMERICA,<br>    Counterclaim Plaintiff,<br><br>v.<br><br>ALBERTO AROESTE,<br>    Counterclaim Defendant.<br>_____ | Case No. 22-cv-682-AJB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES' RESPONSE IN OPPOSITION TO ALBERTO AROESTE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: November 13, 2023 |

1

# MEMORANDUM

The only issue raised in Alberto Aroeste's motion for summary judgment is whether he is a United States person for purposes of the FBAR filing requirement. As Alberto Aroeste clearly meets the definition of United States person as defined in the 31 C.F.R. § 1010.350(b), he is not entitled to summary judgment. To the contrary, the United States is entitled to summary judgment. For 2012 and 2013, Alberto Aroeste was a lawful permanent resident of the United States and failed to file reports of his foreign bank accounts. He is liable for the FBAR penalties against him.

# ARGUMENT

**I.    Alberto Aroeste is a United States Person for FBAR Purposes**

Section 1010.350 of the Title 31 regulations requires United States persons having a financial interest in, or signature or other such authority over, a bank, securities, or other financial account that is maintained in a foreign country to report such relationship to the government on an FBAR. The regulations define "United States person" to include "a resident of the United States. A resident of the United States is an individual who is a resident alien under 26 U.S.C. [§ ]7701(b) and the regulations thereunder[.]" A resident alien under section 7701(b) includes an individual who is a lawful permanent resident of the United States. 26 U.S.C. § 7701(b)(1)(A)(i).

Alberto Aroeste appears to argue that by virtue of a provision in section 7701(b)(6) which addresses the cessation of lawful permanent residency he is not a United States person for purposes of the FBAR filing requirements because he commenced to be treated as a resident of Mexico under the provisions of the tax treaty between the United States and Mexico. However, commencement of treatment as a resident of a foreign country under the provisions of a tax treaty is only one element of the provision in section 7701(b)(6) and does not on its own affect an individual's status as a lawful permanent resident under section 7701(b).

Alberto Aroeste does not claim—let alone provide any evidence—that he meets the other elements of section 7701(b)(6).[1,2]

## II. Alberto Aroeste Failed to Meet the Requirements of Section 7701(b)(6)

Alberto Aroeste does not meet the requirements of section 7701(b)(6). His argument focuses on the flush language in section 7701(b)(6), which provides that: "An individual shall cease to be treated as a lawful permanent resident of the United States if such individual commences to be treated as a resident of a foreign country under the provisions of a tax treaty between the United States and the foreign country, does not waive the benefits of such treaty applicable to residents of the foreign country, and notifies the Secretary of the commencement of such treatment." Alberto Aroeste ignores the second and third requirements, focusing only on whether he has commenced to be treated as a resident of a foreign country under the provisions of the tax treaty between the United States and Mexico.

The undisputed material facts show that he both waived the benefits of the U.S.-Mexico treaty and that he failed to timely notify the Secretary that he was commencing to be treated as a resident of a foreign country under the provisions of a tax treaty.

---

[1] Because Mr. Aroeste failed to meet the requirements under section 7701(b)(6) for cessation of lawful permanent residency, we do not address whether that relief would otherwise be available to him or is instead limited to lawful permanent residents who have expatriated on or after June 17, 2008.

[2] It is the United States' position that United States person status for purposes of FBAR filing requirements is determined without regard to section 7701(b)(6), so that even if a taxpayer meets the requirements of section 7701(b)(6), they would still be treated as a US person for purposes of the FBAR filing requirements. *See* 76 Fed. Reg. 10234 (Feb. 24, 2011) (preamble to the 31 C.F.R. § 1010 regulations providing that "[a] legal permanent resident of the United States who elects under a tax treaty to be treated as a non-resident for tax purposes must still file the FBAR.') However, because Mr. Aroeste failed to meet the section 7701(b)(6) requirements the relevance of section 7701(b)(6) to the FBAR filing requirements does not need to be addressed to resolve Albero Aroeste's motion for summary judgment.

Alberto Aroeste filed a Form 1040 for the 2012 and 2013 tax year jointly with Estella Aroeste (UMF ¶¶ 5 (2012), 12 (2013)), his U.S. citizen spouse. UMF ¶¶ 6, 14. Accordingly, he waived the benefits of the treaty and failed to notify the IRS of commencement of treatment as a resident of Mexico. *See* 26 U.S.C. § 6013(a)(1) ("[N]o joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien."); 26 C.F.R. § 301.7701(b)-7(e), Ex. 4 (explaining that a taxpayer who can claim residency in both states under a treaty who files their tax return as a resident will be taxed as a resident); IRS Notice 2009-85, at 7 (defining notice as submitting IRS Forms 8833 and 8854, Initial and Annual Expatriation Statement). Therefore, he failed to meet at least two of the three independent requirements under section 7701(b)(6).

Alberto Aroeste's attempts to claim the Treaty position did not come until two and three years after the respective filing deadlines—and after the audit into his income taxes and FBAR compliance began. UMF ¶¶ 11–12, 17–18. Through submitting new returns, he attempted to reclassify himself as a single filer as opposed to a joint filer with his spouse. But "[f]or any taxable year with respect to which a joint return has been filed, separate returns shall not be made by the spouses after the time for filing the return of either has expired." 26 C.F.R. § 1.6013-1. These submitted returns were thus severely untimely, and they were not accepted by the IRS. ECF No. 69 (Stipulation of Facts) ¶ 64–67 (noting that while Alberto Aroeste submitted purportedly amended returns for 2008 through 2014, only the 2008 and 2011 amended returns were processed, and that the original returns for those years were later reinstated); *see United States v. Guy*, 1991 WL 253007, at *3 (S.D. Ohio Sept. 25, 1991) (accepting amended returns is a "matter of the internal administrative discretion of the IRS").[3] And while these returns attached Forms

---

[3] That he timely filed individual income tax returns claiming non-resident alien status (Form 1040-NR) for later years (ECF No. 69 ¶ 68–69) does not rectify his failure to do so for 2012 and 2013.

8833, as required by IRS Notice 2009-85, neither attached the requisite Form 8854. *See* ECF No. 69-4 (2012), 69-5 (2013); IRS Notice 2009-85, at 7. Thus, neither return, even if the IRS *had* accepted them, would have properly notified the IRS of a commencement of treaty benefits.

Alberto Aroeste never took a valid treaty position for 2012 or 2013. He failed to *commence* treatment, *waived* his ability to claim the treaty benefits, and failed to *notify* the IRS of his status as required by § 7701(b)(6). So for these years Alberto Aroeste is a resident alien and United States person. *United States v. Little*, 828 Fed. App'x 34, 38 (2d Cir. 2020) (finding that a lawful permanent resident who failed to demonstrate to the IRS that he should be "treated as a resident of a foreign country under the provisions of a tax treaty" was also a United States person (quoting 26 U.S.C. § 7701(b)(6))).

### III. The "Tie-Breaker Tests" Are Irrelevant Because Alberto Aroeste Is Still Treated as a U.S. Person for Purposes of FBAR Filings

Alberto Aroeste skips over this basic statutory requirement and instead hinges his argument on the language of the Treaty at issue—specifically, if he is a resident of both the United States and Mexico, he can be treated solely as a resident of Mexico for tax purposes under the Treaty's "tie-breaker tests." *See* ECF No. 70-1, at 9–16.

But this Court need not even reach those tests. Even if he can establish that he is a resident of Mexico under the *Income* Tax Treaty, a dual resident is treated as a U.S. resident for purposes other than computing the individual's income tax liability, including for purposes of FBAR filings. 26 CFR § 301.7701(b)-7(a)(3); 76 Fed. Reg. 10234 (Feb. 24, 2011) (preamble to the 31 C.F.R. § 1010 regulations providing that "[a] legal permanent resident of the United States who elects under a tax treaty to be treated as a non-resident for tax purposes must still file the FBAR. Thus, the Court need not analyze Alberto Aroeste's ties to Mexico.

## CONCLUSION

Alberto Aroeste is a resident alien, a United States person, and an accountholder who was required to file an FBAR in 2012 and 2013. His belated attempts to claim a treaty position do not save him from compliance with the FBAR. Summary judgment in his favor should be denied.

Dated: September 5, 2023.                    Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Christina T. Lanier
CHRISTINA T. LANIER
Trial Attorney, Tax Division
U.S. Department of Justice

ANDREW R. HADEN
Acting United States Attorney
Southern District of California

*Counsel for United States of America*